UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BYRON BREEZE, JR.,**

    **Plaintiff,**

    **v.**

**KABILA INC.,**

    **Defendant.**

**Civil Action No. 21-753 (JDB)**

## MEMORANDUM OPINION

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., is a broad and powerful statute aimed at providing a "clear and comprehensive national mandate to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) (internal quotation marks and citation omitted). The Act as a whole, and especially Title III's guarantee of equal access to public accommodations for the disabled, marks "a milestone on the path to a more decent, tolerant, progressive society." Id. (quoting Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring)). But "private enforcement suits are the primary method of obtaining compliance with the Act," Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc) (internal quotation marks and citation omitted); see also 42 U.S.C. § 12188(a) (authorizing private suits and injunctive relief under the ADA), and disabled persons seeking to enforce their right to equal access must reckon with the jurisdictional limitations of the federal courts and with the Federal Rules of Civil Procedure.

The instant case vibrantly presents the tension between citizen-suit enforcement of the ADA and the generally applicable requirements of federal litigation. Plaintiff Byron Breeze, Jr., claims that architectural barriers prevented him from accessing a restaurant owned and operated

1

by defendant Kabila Inc., in violation of Title III of the ADA.  See generally Compl. [ECF No. 1]

Kabila moves to dismiss Mr. Breeze's complaint, arguing that his claims are moot, that he lacks

standing, and that his complaint fails to adequately state a claim.  See generally Def.'s Statement

of P. & A. in Supp. of Def. Kabila Inc.'s Mot. to Dismiss Pl.'s Compl. [ECF No. 8-1] ("Def.'s

Mot."); Reply in Supp of Def.'s Mot. [ECF No. 11] ("Def.'s Reply").  After multiple rounds of

briefing and oral argument on Kabila's motion, for the reasons explained below, the Court will

deny the motion to dismiss in full.

## **Background**

Byron Breeze, Jr., was born without legs or complete hands, and he uses a wheelchair to

move around and engage in day-to-day activities.  Compl. ¶ 5; Decl. of Byron Breeze, Jr., in Supp.

of Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss Compl. [ECF No. 10-1] ("Breeze Decl.")

¶ 3.[1]  In November 2020, Mr. Breeze travelled from his home in Hyattsville, Maryland, a suburb

of Washington, D.C., to have lunch at Thunder Burger & Bar ("Thunder Burger").  Breeze Decl.

¶ 4; Compl. ¶¶ 4, 9.  Thunder Burger, operated by defendant Kabila Inc., is a restaurant located in

the historic D.C. neighborhood of Georgetown, and it specializes (as one might expect) in burgers,

sandwiches, and beer.  Breeze Decl. ¶¶ 15, 17; Def.'s Mot. at 1–2.  When he arrived at the

restaurant, Mr. Breeze noticed a small step at the threshold of Thunder Burger's entrance on M

Street, Breeze Decl. ¶ 6; accord Decl. of Mouhsine Idrissi [ECF No. 11-1] ("Idrissi Decl.") ¶ 3,

and although only a few inches high, the step was enough to prevent Mr. Breeze from entering the

restaurant in his wheelchair, Breeze Decl. ¶¶ 5–6.  Unable to locate a ramp or to communicate his

---

[1] Much of what follows is derived from the declaration Mr. Breeze attached to his opposition to Kabila's motion to dismiss.  The Court will rely on the declaration for narrative purposes here, and, as discussed further infra, for purposes of "assur[ing] itself of its own subject matter jurisdiction," Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005), but not when assessing the sufficiency of the complaint under Rule 12(b)(6).  Defendant's various objections to this recitation of facts are addressed below.

predicament to staff, Mr. Breeze left, unable to eat at Thunder Burger.  Id. ¶¶ 5–6, 8; see generally Compl. ¶¶ 9, 23.

No stranger to ADA litigation,[2] Mr. Breeze informed his attorney about his abortive trip to Thunder Burger and about the step at the restaurant's front entrance; his attorney subsequently hired a third party to inspect the premises for violations of the ADA and associated regulations. Breeze Decl. ¶¶ 9–10.  While awaiting the results of this inspection, Mr. Breeze returned to Thunder Burger in February 2021 but again found his path blocked by the same barriers.  Id. ¶ 11. At this point, he decided to take legal action, authorizing his attorney to file a lawsuit regarding his inability to access the restaurant.  Id. ¶ 12.  At around the same time—and before the complaint in his matter was filed—Mr. Breeze received and reviewed the inspector's report, which identified various other barriers to access both at the entrance and inside Thunder Burger.  Id.

Mr. Breeze filed the instant lawsuit on March 22, 2021, bringing claims under the ADA and the District of Columbia Human Rights Act ("DCHRA") against Kabila as well as M Street Georgetown LP ("M Street").  See Compl. at 1.  In his complaint, Mr. Breeze states that he was "denied full access to[] and full enjoyment of the facilities" when he "was precluded by physical barriers to access, dangerous conditions, and ADA violations existing upon the Defendants'

---

[2] In its motion and briefing, Kabila repeatedly points to Mr. Breeze's previous lawsuits, even attaching a PACER printout showing the similar lawsuits he has filed in the past.  See Def.'s Mot. at 1 & n.1; Def.'s Mot. Ex. 1 [ECF No. 8-2].  Kabila does not spell out the relevance of this information, but to the extent defendant implies that Mr. Breeze is a "tester" who either did not or does not intend to visit Thunder Burger, the Court rejects Kabila's suggestion.  Even if Mr. Breeze were a tester, courts of appeals have "uniformly concluded that an individual's 'tester' status does not defeat standing," Suárez-Torres v. Panaderia y Reposteria España, Inc., 988 F.3d 542, 550 & n.5 (1st Cir. 2021) (collecting cases), and "[c]ourts may not find that a plaintiff's status as an ADA tester undermines the plausibility of future injury," Mosley v. Kohl's Dep't Stores, Inc., 942 F.3d 752, 758 (6th Cir. 2019) (citing Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 457 (4th Cir. 2017)).  Perhaps in an extreme case, a pattern of vexatious ADA litigation could undercut the plausibility of a plaintiff's allegations or give rise to an inference of bad faith.  See Molski v. Mandarin Touch Rest., 385 F. Supp. 2d 1042, 1046–47 (C.D. Cal. 2005) (questioning intent to return of plaintiff who had "uniformly professe[d] an intent to return to each business" in over four hundred prior lawsuits and who had exhibited a "well-established pattern of abusive litigation"); see also Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368, 1373–75 (M.D. Fla. 2004).  But the Court does not find such an inference warranted here.

Property and Subject Facility." Compl. ¶¶ 9, 23. He also lists dozens of aspects of Thunder Burger's facility which allegedly violate the ADA.[3] Compl. ¶ 22.

Mr. Breeze's catalog of allegedly unlawful barriers to access at Thunder Burger can be divided into two general categories: "entrance violations" (or "entrance claims") and "interior violations" (or "interior claims"). The entrance violations, enumerated in sub-paragraph 22(a), comprise features of Thunder Burger that actually prevented Mr. Breeze from entering the restaurant at all: namely, the step at the threshold, the absence of a ramp, and the general "[f]ail[ure] to provide an accessible means of ingress and/or egress . . . for navigation by a wheelchair." See Compl. ¶ 22(a)(i)–(iv).[4] The interior violations—the lion's share of the allegedly unlawful features of the restaurant—consist of a variety of alleged barriers to access identified by the pre-suit inspection but never personally encountered by Mr. Breeze. See Breeze Decl. ¶ 12. Examples include: the "failure to provide the minimum percentage of accessible dining tables and surfaces at the interior dining area," Compl. ¶ 22(d); the "[f]ailure to provide the required minimum knee and toe clearance at the dining tables located at the exterior dining area," id. ¶ 22(m); and seventeen deficiencies in the men's restroom, including a door that does not leave

---

[3] The ADA itself imposes very few specific requirements for public accommodations. Instead, the Department of Justice and the Architectural and Transportation Barriers Compliance Board ("the Access Board") have promulgated detailed regulations governing the specific requirements for compliance with the ADA's general mandates. See 42 U.S.C. § 12186(b) (requiring the Attorney General to issue regulations "includ[ing] standards applicable to [public accommodations]"); id. § 12186(c) (requiring that the Attorney General's regulations be consistent with those issued by the Access Board). The current regulations governing public accommodations can be found at 28 C.F.R. pt. 36. In addition, any public accommodation which has either been constructed or altered since 1992 must comply with the Americans With Disabilities Act Accessibility Guidelines ("ADAAG"), issued by the Access Board and currently available at 36 C.F.R. § 1191 apps. B & D. The ADAAG was revised effective 2004, and the Department of Justice promulgated revised regulations in 2010, in large part incorporating the 2004 ADAAG. Together these regulations are referred to as the 2010 Standards, see 28 C.F.R. § 36.104, and can be found in one document at https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm#pgfId-1010043.

[4] Sub-paragraph 22(a) also alleges that Thunder Burger "fails to provide the required minimum maneuvering clearance" and "minimum clear width" around its two sets of double doors at the entrance. Compl. ¶ 22(a)(v)–(vii). Although these alleged violations are at the entrance of the restaurant, Mr. Breeze never claims that the double doors actually prevented him from entering the restaurant. Consequently, for reasons made clear below, the Court will group these unencountered barriers with the "interior violations."

the required maneuvering space, id. ¶ 22(o)(a)(ii); a stall lacking "grab bars on the rear and side walls," id. ¶ 22(o)(a)(xi); and a paper towel dispenser that is mounted too high, id. ¶ 22(o)(a)(xvii). On the basis of all of these alleged barriers to access, Mr. Breeze seeks a declaratory judgment that Thunder Burger is in violation of the ADA and DCHRA, injunctive relief under the ADA, compensatory damages under the DCHRA,[5] and reasonable attorney's fees.  See Compl. ¶¶ 40–46.

M Street filed an answer on June 25, 2021, see Def.'s Answer to Pl.'s Compl. [ECF No. 7], but Mr. Breeze voluntarily dismissed all claims against M Street on August 21, see Stipulation of Dismissal Without Prejudice [ECF No. 12].  Kabila, on the other hand, timely filed the instant motion to dismiss on July 30, arguing that Mr. Breeze lacks Article III standing in this matter and that his complaint is factually insufficient under Federal Rule of Civil Procedure 12(b)(6).  See generally Def.'s Mot.  Mr. Breeze filed a brief opposing this motion, attaching a declaration that further explained his attempts to access Thunder Burger as well as his desire to return to the restaurant if it is made accessible.  See Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. [ECF No. 10] ("Pl.'s Opp'n"); Breeze Decl.  In its reply brief, Kabila argued for the first time that Mr. Breeze's claims are moot, see Def.'s Reply at 8, attaching a declaration by Mouhsine Idrissi, Kabila's secretary, stating that Thunder Burger already has a wheelchair ramp for its entrance and that Kabila had recently installed a door buzzer and accessibility sign at the restaurant's front entrance, Idrissi Decl. ¶¶ 4–5.  This Court subsequently granted plaintiff leave to file a sur-reply responding to defendant's mootness argument.  See Min. Order, Aug. 31, 2021.  Mr. Breeze timely filed his sur-reply, see Pl.'s Sur-Reply to Def.'s Reply for the Limited Purpose of Addressing the

---

[5] See D.C. Code. § 2-1403.16 (creating private cause of action for violations of the DCHRA and authorizing a court to "grant any relief it deems appropriate, including[] the relief provided in . . . [§] 2-1403.13(a)"); id. § 2-1403.13(a)(1)(D) (authorizing "[t]he payment of compensatory damages to the person aggrieved by such practice").

Mootness Argument [ECF No. 14] ("Pl.'s Sur-Reply"), and Kabila filed a sur-sur-reply on September 17, 2021, <u>see</u> Sur-Sur-Reply in Supp. of Def.'s Reply [ECF No. 15] ("Def.'s Sur-Sur-Reply").  The Court then ordered argument on the motion, <u>see</u> Min. Order, Sept. 22, 2021, which took place on October 26, 2021.  The motion is fully briefed and argued—it is therefore ripe for decision.

**<u>Analysis</u>**

## I.   <u>Subject-Matter Jurisdiction</u>

The Court begins, as it must, with Kabila's challenges to its jurisdiction.  <u>See, e.g.</u>, <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 93–95 (1998).  Article III courts may decide only "Cases" or "Controvers[ies]."  U.S. Const. art. III, § 2.  Over the centuries, this language has been distilled into "a series of principles termed 'justiciability doctrines,' among which are standing . . . [and] mootness."  <u>Nat'l Treasury Emps. Union v. United States</u>, 101 F.3d 1423, 1427 (D.C. Cir. 1996).  Kabila moves to dismiss Mr. Breeze's complaint on both of these grounds, arguing that the entrance claims are moot in light of the pre-existing ramp and Kabila's subsequent alterations to Thunder Burger and that Mr. Breeze lacks standing to bring any of his claims.  The Court will address the entrance claims first, determining whether they are moot and assessing Mr. Breeze's standing.  Then, the Court will decide whether Mr. Breeze has standing with respect to the interior claims.

### A.  <u>Legal Standard</u>

"When a court lacks subject-matter jurisdiction, it has no authority to address the dispute presented."  <u>Attias v. Carefirst, Inc.</u>, 865 F.3d 620, 624 (D.C. Cir. 2017).  As a consequence, if a federal court determines at any time that it lacks subject-matter jurisdiction—including by determining that the plaintiff lacks standing—then it must dismiss the case.  <u>E.g.</u>, <u>Bauer v.</u>

6

Marmara, 774 F.3d 1026, 1029 (D.C. Cir. 2014); see also Fed. R. Civ. P. 12(h)(3).   This requirement "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"   Steel Co., 523 U.S. at 94–95 (quoting Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884)).

A court's jurisdiction "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Kareem v. Haspel, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1991)).   At the motion to dismiss stage, then, the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.'" Id. at 866 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Am. Clinical Lab'y Ass'n v. Azar, 931 F.3d 1195, 1203 (D.C. Cir. 2019) ("At the motion to dismiss stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." (quoting Lujan, 504 U.S. at 561)).   But "[b]ecause Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under Rule 12(b)(6)." Equal Rts. Ctr. v. Uber Techs., Inc., 525 F. Supp. 3d 62, 72 (D.D.C. 2021) (alteration removed) (quoting Schmidt v. U.S. Capitol Police Bd., 826 F. Supp. 2d 59, 65 (D.D.C. 2011)).

"It is well-settled that [a court] may consider materials outside the pleadings to determine [its] jurisdiction." Kareem, 986 F.3d at 866 n.7 (citing Haase v. Sessions, 835 F.2d 902, 908 (D.C. Cir. 1987)); accord Kiakombua v. Wolf, 498 F. Supp. 3d 1, 22 (D.D.C. 2020) ("[U]nlike a Rule 12(b)(6) motion, the court may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." (citing Jerome Stevens Pharms., Inc. v.

FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005))).  Any declarations or affidavits submitted during briefing are thus fair game for a court deciding a jurisdictional motion.  E.g., Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations, LLC v. Stantec, Inc., Civ. A. No. 20-2603 (BAH), 2021 WL 75766, at *4 (D.D.C. Jan. 8, 2021).  But even when considering evidence outside the pleadings, the court nonetheless "must still 'accept all of the factual allegations in [the] complaint as true.'"  Jerome Stevens Pharms., 402 F.3d at 1253–54 (quoting United States v. Gaubert, 499 U.S. 315, 327 (1991)).

### B.  The Entrance Claims

Defendant raises mootness and standing challenges to the Court's jurisdiction over the entrance claims (i.e., those relating to the step and missing ramp that allegedly prevented Mr. Breeze from accessing Thunder Burger, see Compl. ¶ 2(a)(i)–(iv); Breeze Decl. ¶¶ 5-8).  The Court takes these arguments in turn.

### i.  Mootness

"A lawsuit becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  Zukerman v. U.S. Postal Serv., 961 F.3d 431, 442 (D.C. Cir. 2020) (quoting Almaqrami v. Pompeo, 933 F.3d 774, 779 (D.C. Cir. 2019)).  A case therefore must be dismissed as moot "only when it is impossible for a court to grant 'any effectual relief whatever' to the prevailing party."  Id. (quoting Knox v. Serv. Emps. Int'l Union, Loc. 1000, 567 U.S. 298, 307 (2012)).

Kabila's mootness argument in this case is factual in nature.  Contrary to Mr. Breeze's allegations, Kabila asserts that "Thunder Burger has always had a portable wheelchair ramp," Def.'s Reply at 8; accord Def.'s Mot. at 2 n.2, and it now also submits that "as of August 17, 2021, Thunder Burger has installed a doorbell and accessibility signage at the entrance of the restaurant,"

8

Idrissi Decl. ¶ 5; see also Def.'s Reply at 4–5.  These facts together, Kabila argues, render Breeze's entrance claims moot.  Def.'s Reply at 8; Def.'s Sur-Sur-Reply at 4–5.

The Court does not agree.  With respect to the signage and the doorbell, Kabila's argument faces a fundamental obstacle: it fixed the wrong problems.  Per his complaint, Mr. Breeze challenges only defendant's "[f]ail[ure] to provide an accessible means of ingress and/or egress . . . for navigation by a wheelchair," specifically listing the step at the entrance and the absence of a ramp.  Compl. ¶ 22(a)(i)–(iv).  Although Mr. Breeze's declaration mentions the lack of accessibility signage or doorbell, Breeze Decl. ¶¶ 7–8, those deficiencies do not appear in the complaint itself.  As Kabila itself correctly points out in its briefing, new allegations in a declaration are insufficient to amend a complaint.  See Def.'s Reply at 7 (citing Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014)).  Accordingly, the only entrance claims properly before the Court are those listed in paragraph 22(a) of the Complaint, and Kabila's installation of the accessibility sign and doorbell, while a boon to future disabled patrons of Thunder Burger, does nothing to remedy or remove the barriers actually alleged in this suit.  As a consequence, those changes are insufficient to moot plaintiff's claims.

Even if this were not the case, Kabila's voluntary remediation of these two deficiencies still would not deprive the Court of jurisdiction.  "[A]s a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case . . . .'"  Zukerman, 961 F.3d at 442 (quoting Cnty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).  A defendant may overcome this general presumption only by "demonstrat[ing] that '(1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation.'"  Porup v. CIA, 997 F.3d 1224, 1231 (D.C. Cir. 2021) (quoting Zukerman, 961 F.3d at 442).  A defendant

seeking to demonstrate mootness by voluntary cessation "bears [a] formidable burden." <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.</u>, 528 U.S. 167, 190 (2000).

"Because a private plaintiff can sue only . . . for removal of the barrier[] under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." <u>Oliver v. Ralphs Grocery Co.</u>, 654 F.3d 903, 905 (9th Cir. 2011) (internal citation omitted). But not every "voluntary removal of alleged barriers" has this effect; rather, only structural or permanent changes to a facility are generally sufficient to satisfy defendant's "formidable" burden of showing that the violations could not reasonably be expected to recur. <u>Compare, e.g.</u>, <u>Sharp v. Rosa Mexicano, D.C., LLC</u>, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) (installation of handicap-accessible sink mooted case), <u>and</u> <u>Kennedy v. Omegagas & Oil, LLC</u>, 748 F. App'x 886, 892 (11th Cir. 2018) (per curiam) (installation of ADA-compliant toilet mooted case), <u>and</u> <u>Bacon v. Walgreen Co.</u>, 91 F. Supp. 3d 446, 452 (E.D.N.Y. 2015) ("bolt[ing] [security] sensors to the floor in their new [ADA-compliant] position" mooted case), <u>with</u> <u>Curtis v. Home Depot U.S.A., Inc.</u>, No. 1:13-CV-1151 AWI GSA, 2015 WL 351437, at *5 (E.D. Cal. Jan. 23, 2015) (removal of merchandise blocking pathway insufficient to moot case because "unlike other barriers, Home Depot could easily revert to obstructing the accessible routes through placement of merchandise or displays" and policy against blocking aisle was often ignored).

Here, Kabila has not demonstrated that Thunder Burger's alterations are structural or permanent in the same sense as the "fixtures" at issue in <u>Sharp</u>, <u>Kennedy</u>, and <u>Bacon</u>. Although Kabila asserts that its buzzer and accessibility signage are "permanently installed," Def.'s Sur-Sur-Reply at 4, it provides no details as to the method of installation, and the pictures included in the Idrissi Declaration do not assure the Court of the permanence of these new features. On the contrary, the accessibility sign appears to be removable with nothing more than a Phillips head

screwdriver, and the Court is left to guess whether the doorbell is affixed by a screw in the façade, by superglue, or simply by Velcro.  Simply using the word "permanent" and representing that "there is just no incentive" to remove the new features, Hr'g Tr. 7:10–15,[6] does not satisfy the defendant's "formidable burden" to show that its voluntary conduct has mooted this case.[7]  Thus, even if the buzzer and accessibility sign did correspond to claims alleged in the complaint, the Court would still not find that Mr. Breeze's injury has been "completely and irrevocably eradicated by intervening events."  <u>Zukerman</u>, 961 F.3d at 440.

The Court also rejects Kabila's arguments with respect to the purported ramp at Thunder Burger's entrance.  Whereas Mr. Breeze pled that Thunder Burger "[f]ails to provide the required ramp for the step at the main entrance as required," Compl. ¶¶ 22(a)( iv); <u>accord</u> Breeze Decl. ¶¶ 6–8, defendant counters that Thunder Burger in fact already has a portable wheelchair ramp that can be installed by staff when needed, <u>see</u> Idrissi Decl. ¶ 4; Def.'s Reply at 4; Def.'s Sur-Sur-Reply at 4–5.  Kabila has provided no supporting evidence for this assertion—unlike the accessibility sign and doorbell, Mr. Idrissi did not include any pictures or other corroboration of the existence of this ramp in his declaration.  Nor has Kabila provided any specifics about the ramp enabling the Court to determine whether the purported ramp is ADA-compliant.  Thus, even if the Court were to assume that the proffered ramp <u>exists</u>, that fact alone would not be suffice to moot Mr. Breeze's claims regarding the accessibility of the restaurant's entrance.

---

[6] This citation refers to a rough transcript of the October 26 hearing on Kabila's motion. This transcript will be publicly available when finalized but, due to the process of finalization, discrepancies between the rough transcript cited here and the final version may exist.

[7] The Court also notes that defendant's actions—occurring just before the conclusion of briefing on the instant motion and directly mirroring statements in plaintiff's declaration—appear to be a gambit designed to deprive this Court of jurisdiction.  This conclusion informs the Court's analysis of the likelihood of recurrence. <u>See United States v. W. T. Grant Co.</u>, 345 U.S. 629, 632 n.5 (1953) ("It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit . . . ."); <u>United States v. Askins & Miller Orthopaedics, P.A.</u>, 924 F.3d 1348, 1356 (11th Cir. 2019) (inquiring "whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit" (citation omitted)).

Factual disputes are resolved by discovery and summary judgment, not through competing declarations attached to Rule 12(b) briefing. E.g., Uber, 525 F. Supp. 3d at 77 ("[T]he purportedly erroneous nature of [plaintiff's] allegations about known facts is a matter that is properly addressed at the summary judgment stage, not on a motion to dismiss where the plaintiff's allegations must be taken as true."). And although "the [c]ourt may not deny [a factual challenge to its jurisdiction] merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," Hamilton v. United States, 502 F. Supp. 3d 266, 272 (D.D.C. 2020) (quoting Erby v. United States, 424 F. Supp. 2d 180, 182–83 (D.D.C. 2006)), the present "he-said-she-said" situation, with Mr. Breeze asserting that there was not a ramp and Kabila asserting that there was, does not support a jurisdictional dismissal at the motion to dismiss stage, see, e.g., Johnson v. Right Crons Inc., No. 5:20-CV-08117-EJD, 2021 WL 3565441, at *3–4 (N.D. Cal. Aug. 11, 2021) (holding that, even if "the Court does not need to presume the truthfulness of Plaintiff's allegations under factual attack," an affidavit by defendant denying plaintiff's claims was not "sufficient evidence for the Court to conclude that Plaintiff has failed to establish he suffered an injury-in-fact."). Accordingly, the Court concludes that none of Mr. Breeze's entrance claims are moot.

       ii.  <u>Standing</u>

The Court now turns to Mr. Breeze's standing with respect to the entrance claims. Article III of the U.S. Constitution establishes an "'irreducible constitutional minimum of standing' consist[ing] of three familiar elements." Farrell v. Blinken, 4 F.4th 124, 129 (D.C. Cir. 2021) (quoting Lujan, 504 U.S. at 560). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The "'[f]irst and foremost' of standing's three elements'" is injury-in-fact, id. (quoting Steel Co., 523 U.S. at

103), which requires a plaintiff to assert "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," Jeffries v. Volume Servs. Am., Inc., 928 F.3d 1059, 1063 (D.C. Cir. 2019) (quoting Lujan, 504 U.S. at 560. In addition, a plaintiff who "seeks prospective declaratory and injunctive relief . . . must establish an ongoing or future injury that is 'certainly impending[,]'" and he "may not rest on past injury." Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)); see also TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). In other words, "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury." McKnight-Nero v. Walmart, Inc., Case No. 20-cv-1541 (APM), 2021 WL 663315, at *3 (D.D.C. Feb. 19, 2021) (quoting Nat. Res. Def. Council v. Pena, 147 F.3d 1012, 1022 (D.C. Cir. 1998)).

There is no serious dispute that Mr. Breeze satisfies the requirements of traceability and redressability. See Hr'g Tr. 2:5–7. Whatever injury he has suffered or will suffer is clearly traceable to Thunder Burger's alleged non-compliance with the ADA, and the broad injunction he seeks would undoubtedly remedy his injury. See Compl. ¶ 46(b)–(d). To the extent Kabila challenges these aspects of Mr. Breeze's standing, its arguments either duplicate those regarding injury-in-fact, see Def.'s Mot. at 5, or reiterate its already-rejected mootness arguments, Def.'s Reply at 4.

Instead, Kabila's challenge to Mr. Breeze's standing centers on injury-in-fact. "Private parties bringing suit under Title III of the ADA are limited exclusively to injunctive relief," and

so, in order to allege a sufficient injury-in-fact, an ADA plaintiff must plead a "real and immediate . . . threat of future injury." McKnight-Nero, 2021 WL 663315, at *2 (citation omitted). This requirement can be satisfied "by demonstrating [past] injury-in-fact coupled with an intent to return to a noncompliant facility." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc); accord Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 455 (4th Cir. 2017) ("[W]hen an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury . . . ."). Thus, in order to survive the instant motion to dismiss, Mr. Breeze must plausibly allege a past injury at the hands of Kabila and also demonstrate "a plausible intent to return to the noncompliant accommodation." Mosley v. Kohl's Dep't Stores, Inc., 942 F.3d 752, 757 (6th Cir. 2019). The Court will take these two required showings in turn.

### 1. Past Injury

"[P]ast injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm." Nanni, 878 F.3d at 455; accord Chapman, 631 F.3d at 948 ("[E]ncounters with the noncompliant barriers related to one's disability are sufficient to demonstrate a[] [past] injury-in-fact for standing purposes . . . ."); Hirsch v. Hui Zhen Huang, No. 10 Civ. 9497 (LTS), 2011 WL 6129939, at *2 (S.D.N.Y. Dec. 9, 2011) ("When a barrier prevents a plaintiff in a wheelchair from being able to enter a restaurant without assistance, the plaintiff's injury is concrete and particularized.").

Applying this well-established rule here, Mr. Breeze has adequately alleged a past injury-in-fact arising from his visits to Thunder Burger. In his complaint, he alleged that he uses a wheelchair for mobility, Compl. ¶ 5, and that he "attempted to access" Thunder Burger but was

"precluded by physical barriers to access . . . and ADA violations," which "include but are not limited to those enumerated [in paragraph 22]."  Compl. ¶ 23.  In his declaration, Mr. Breeze provides more flesh for this rather skeletal assertion, explaining that he visited defendant's restaurant in November 2020 in order "to have lunch," but upon arriving, he "observed that there was a step leading to the double front entrance door" and was thus "unable to enter the Restaurant due to this step at the entrance."  Breeze Decl. ¶¶ 4–6.  He then states that he returned to Thunder Burger in February 2021 but that the "same barriers to access [he] encountered . . . in November 2020 were still present" and so he "was again unable to enter the restaurant."  Id. ¶ 11.

On the basis of these submissions, Mr. Breeze has sufficiently alleged a past injury-in-fact. In Nanni v. Aberdeen Marketplace, for example, the Fourth Circuit held that a wheelchair-bound plaintiff had adequately pled injury-in-fact by alleging that he had visited the defendant's shopping mall "three or four times" over the previous three years and that "[d]uring those visits, [he] encountered noncompliant parking spaces that 'caused him difficulty exiting and entering his vehicle,'" as well as "other barriers . . . including curb ramps and a sidewalk ramp, which required him to exercise 'extra care.'"  Nanni, 878 F.3d at 455 (citations omitted).  Simply "[b]y alleging that [he] visited the [mall] and personally encountered architectural barriers to access," the Court held, the plaintiff had "ple[d] past injuries that are concrete, particularized, and actual."  Id.  Mr. Breeze has made essentially the same allegations at essentially the same level of detail as the plaintiff in Nanni.  Especially at the pleading stage, nothing more is required.

Kabila instead notes that Mr. Breeze has failed to allege a number of specific facts regarding his visits to Thunder Burger, including the dates on which they occurred and whether he attempted to contact Thunder Burger staff to inform them of his concerns.  See Def.'s Mot. at 4; Def.'s Reply at 3.  But Kabila cites no authority requiring an ADA plaintiff to plead with this kind

of specificity in order to establish standing; on the contrary, "general factual allegations of injury" can suffice to establish a plausible injury-in-fact at the pleading stage.  Azar, 931 F.3d at 1203; see also Hirsch, 2011 WL 6129939, at *2 (rejecting argument that plaintiff had not adequately alleged injury-in-fact because he had not "pleaded the date that he visited the Restaurant or the height of the step that impeded his entry").  The Court agrees with Mr. Breeze that "the type of factual details identified by Kabila are not required . . . to sufficiently allege an injury to satisfy Article III standing requirement."  Pl.'s Opp'n at 8.[8]

### 2.  Intent to Return

Having concluded that Mr. Breeze has sufficiently pled a past injury-in-fact, the Court moves to determining whether he has adequately alleged a plausible intent to return to Thunder Burger.  In his complaint, Mr. Breeze states that he "intends to visit the Defendant['s] Property and Subject Facility[] again in the future (immediately upon Defendant['s] compliance with an Order of this Court . . . [to] remedy the subject ADA and/or ADAAG violations)."  Compl. ¶ 25; accord id. ¶ 9 ("Plaintiff continues to desire to visit the Defendants' Property and/or the Subject Facility in the future, but continues to be injured in that he is unable to . . . .").  Defendant, not without cause, calls these statements "conclusory," "generic," and consequently "insufficient to establish standing."  Def.'s Mot. at 6.

But the Court will also consider Mr. Breeze's declaration to the extent it does not contradict the allegations of the complaint.  See, e.g., Kareem, 986 F.3d at 865–66.  In his declaration, Mr. Breeze reiterates that "[i]f the barriers to access . . . were remediated so that [he] could enter the

---

[8] Defendant also suggests, based on the paucity of factual detail in the complaint and the fact that Thunder Burger's indoor dining was closed for significant portions of 2020, that Mr. Breeze simply fabricated his allegations and has never actually visited Thunder Burger.  E.g., Def.'s Mot at 2, 4.  As discussed above, however, Kabila cannot prevail on a 12(b)(1) motion simply by asserting that the facts alleged in Mr. Breeze's complaint and sworn declaration are untrue, and it even more surely may not do so through innuendo alone.

restaurant . . . [he] would immediately return to the Restaurant."  Breeze Decl. ¶ 21.  He also adds that his home in Hyattsville, MD, is approximately eleven miles from Thunder Burger and that the area around his residence "has mostly fast-food restaurants," which he does not enjoy patronizing. Id. ¶¶ 14, 19.  By contrast, he avers that he "enjoy[s] visiting Georgetown" because of its shops, restaurants, and waterfront views,  id. ¶ 20, and he specifically expresses interest in eating at Thunder Burger because of its "unique burger and sandwich menu" and its "wide variety of draft beers,"  id. ¶ 17.

The Court is not lacking for guidance when assessing whether this is sufficient to allege a plausible intent to return to Thunder Burger.  The Supreme Court held in Lujan v. Defenders of Wildlife that a plaintiff's mere "profession of an intent to return to places [he] had visited before"—what the Court called a "some day intention[]"—is insufficient to support a finding of "actual or imminent" injury-in-fact.  504 U.S. at 564 (cleaned up).  In that case, the individual plaintiffs sought to establish injury-in-fact based on their desire to return to foreign countries where they could view endangered wildlife. Id. at 563–64.  But the Court concluded that the plaintiffs' averments were insufficient, as they had provided no "description of concrete plans, or indeed even any specification of when the some day will be."  Id. at 564.  But nine years later in Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190 (2000), the Court "clarified that a plaintiff's 'conditional statements'—that they would visit a place but for ongoing violations—cannot 'be equated with the speculative "some day intentions" that were insufficient to show injury in fact in Lujan.'"  Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting Laidlaw, 528 U.S. at 184).  In Laidlaw, the Court concluded that several plaintiffs had "adequately documented injury in fact" relating to pollution in a local river by stating that they wished to use the river recreationally but were deterred from doing so because they

17

perceived it to be polluted.  Laidlaw, 528 U.S. at 181–84.  Although neither of these cases is directly on-point, the Supreme Court's guidance regarding "some day intentions" and "conditional statements" is relevant for determining whether Mr. Breeze has satisfied Article III's standing requirements.

In the ADA context, courts in several circuits use a four-factor test for gauging the likelihood that an ADA plaintiff will return to an allegedly noncompliant facility: "(1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plan to return, and (4) the frequency of the plaintiff's travel near the defendant's business."  E.g., Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1327 (11th Cir. 2013); accord Brown v. Mt. Fuji Japanese Rest., 615 F. App'x 757, 758 (3d Cir. 2015); Molski v. Mandarin Touch Rest., 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005).  The Seventh and Second Circuits use a related rule of thumb, asking whether it is "reasonable to infer, based on the past frequency of [plaintiff's] visits and the proximity of the [facility] to [plaintiff's] home, that [he] intends to return to it in the near future."  Scherr, 703 F.3d at 1074 (quoting Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008)); see also Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 188 (2d Cir. 2013) (re-affirming the Camarillo test).  But "no single factor is dispositive" when gauging the plausibility of a plaintiff's intent to return, and "courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury."  Houston, 733 F.3d at 1337 n.6.

Three of the four prongs under the four-factor test—and both considerations under Camarillo—weigh in favor of Mr. Breeze: proximity of the facility to plaintiff's residence, past patronage of the business, and frequency of travel near the facility.  Mr. Breeze lives approximately eleven miles away from Thunder Burger, which he refers to as "close driving distance."  Breeze

Decl. ¶¶ 14, 20.  A plaintiff need not live right next door to an allegedly non-compliant facility in order to show a likelihood that he will return, especially if he can point to supplemental factors (such as a particular affinity for a restaurant's menu) bolstering his desire to visit again.  See Nanni, 878 F.3d at 455–57 (plaintiff adequately pled intent to return to shopping mall which was forty miles from his home but was on a route he frequently traveled); Gaylor v. Hamilton Crossing CMBS, 582 F. App'x 576, 578, 580–81 (6th Cir. 2014) (Georgia resident had standing to sue shopping center in Chattanooga, Tennessee, based on statements that his sister-in-law lived there and that he enjoyed visiting Chattanooga for its "museums and Civil War-era attractions").  Mr. Breeze's prior visits to Georgetown and his desire to return in the future also militate in his favor, see, e.g., Nanni, 878 F.3d at 455, as does the fact that he attempted to patronize Thunder Burger more than once, see Houston, 733 F.3d at 1336 (weighing plaintiff's two previous visits to restaurant in his favor when assessing intent to return).

Mr. Breeze's statements also closely resemble the "conditional statements" that the Supreme Court concluded were sufficient to allege injury-in-fact in Laidlaw.  See Laidlaw, 528 U.S. at 182–83.  If a plaintiff's statement that he had previously canoed elsewhere on the river in question and "would like to canoe . . . closer to Laidlaw's discharge point, but did not do so because he was concerned that the water contained harmful pollutants" is sufficient to allege injury-in-fact at the summary judgment stage (where the burden on plaintiffs is more stringent), Laidlaw, 528 U.S. at 183, then Mr. Breeze's statements in this case are sufficient to meet his burden at the pleading stage.  See also Hirsch, 2011 WL 6129939, at *3 ("[A] plaintiff's conditional statement that he would visit a particular location in the vicinity of his residence but for the defendant's alleged misconduct can be sufficient to allege a plausible intent to return." (citing Laidlaw, 528 U.S. 183–84)).  More generally, Mr. Breeze's allegations—that he lives eleven miles

from Thunder Burger, likes to visit and eat in the Georgetown neighborhood, and has twice attempted to patronize Thunder Burger—compare favorably with other cases from around the nation in which plaintiffs were found to have alleged a plausible intent to return.[9]

In arguing that Mr. Breeze has not shown a plausible intent to return, Kabila relies heavily on Holt v. American City Diner, Civ. A. No. 05-1745 (CKK), 2007 WL 1438489 (D.D.C. May 15, 2007).   In that case, Mr. Holt, a paraplegic who used a wheelchair for mobility, attempted to visit the American City Diner for lunch but, he alleged, found himself unable to reach the entrance due to several non-ADA-compliant barriers.   Holt, 2007 WL 1438489, at *2.   Despite the ostensible factual similarities with this case, however, Holt is distinguishable on both legal and factual grounds.   At the outset, Holt was decided on summary judgment, where the burden on the plaintiff to show standing is more stringent than on a motion to dismiss.   See Pl.'s Opp'n at 17–18; Def.'s Reply at 6; Hr'g Tr. 12:25–13:1.   And whereas Mr. Holt lived twenty-six miles away from the diner and had only tried to visit it once, see Holt, 2007 WL 1438489, at *8, Mr. Breeze lives only eleven miles from Thunder Burger and has attempted to patronize it twice.   Most importantly, Mr. Breeze has, unlike Mr. Holt, "profess[ed] some specific interest in [Thunder

---

[9] See, e.g., Mosley, 942 F.3d at 760–62 (Arizona resident had standing to sue Michigan location of department store chain because plaintiff regularly visits family in the area and had already booked two trips to perform nearby); Nanni, 878 F.3d at 455–57 (plaintiff alleged sufficient injury-in-fact regarding barriers at shopping mall forty miles from home but on a route plaintiff traveled somewhat regularly); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002) (plaintiff alleged sufficient injury-in-fact regarding barriers at grocery store seventy miles from plaintiff's home based on fact that plaintiff had visited that store location before, explained that he prefers to shop at that chain of stores, and stated that he would visit that location again "if it were accessible"); Disabled in Action, 2003 WL 1751785, at *8–9 (finding plaintiffs' intent to return plausible because "they live in New York," "have been to the restaurant in the past," and "have said that they would return to the [facility] but for the fact that the [wheelchair] lifts do not provide unassisted access").   Conversely, this case bears none of the hallmarks of cases reaching the opposite conclusion, such as extreme distance and a lack of prior patronage. See, e.g., Kennedy v. Solano, 735 F. App'x 653, 655 (11th Cir. 2018) (no standing where plaintiff lived 170 miles from allegedly non-compliant café, had only visited once, and had no concrete plans to return); Smith v. Bradley Pizza, Inc., 821 F. App'x 656, 657–58 (8th Cir. 2020) (no standing where plaintiff lived fifty miles from the Domino's Pizza in question, there were several Domino's restaurants closer to his house, he had never visited the restaurant in question before, and had no concrete plans); Mahoney v. Waldameer Park, Inc., Civ. A. No. 20-3960, 2021 WL 1193240, at *5–6 (E.D. Pa. Mar. 30, 2021) (no standing where plaintiff lived 350 miles from the park in question, had only observed the park through its website, and had neither concrete plans to visit nor any ties to the region where the park was located).

Burger] in order to support his claim that he desires to patronize it in the imminent future."  Id. Mr. Breeze's attestations regarding his travel to Georgetown and his specific interest in Thunder Burger's menu are more specific than the averments of Mr. Holt, who merely alleged that he "continues to desire to and intends [to] visit the Defendant's premises in the future" and that he traveled "to th[e] area" on a weekly basis but "d[id] not give the Court any reason why he desires to return to the Restaurant."  Id. at *6.  Holt is thus neither controlling nor inconsistent with a decision that Mr. Breeze has standing.

Kabila also suggests that Mr. Breeze is obligated to plead more specifically when he plans to return in order to establish a "concrete" injury.  See Def.'s Mot. at 6; Def.'s Reply at 6; Hr'g Tr. 12:19–13:4.  The ADA contains no such requirement; indeed, "requiring plaintiffs to provide a definitive plan for returning to the accommodation itself would frustrate the ADA's aim to 'integrate [individuals with disabilities] into the economic and social mainstream of American life.'"  Mosley, 942 F.3d at 759 (alteration in original) (quoting PGA Tour, 532 U.S. at 675). Disabled persons have just as much right as non-disabled persons to decide on a whim to visit a restaurant for lunch; to require a definitive, specific plan to return as a prerequisite for an ADA lawsuit would be to condition a plaintiff's right to accessibility on the forfeiture of his right to spontaneity.  See id.  Although the definitiveness of a plaintiff's plans is a proper consideration in assessing the plausibility of his professed intent to return, the level of specificity required depends on the activity in question.  Visiting a restaurant a few miles from one's house or canoeing a nearby river is a far different situation from, say, traveling halfway around the world to observe endangered wildlife, and courts may properly account for those differences when assessing the plausibility of a plaintiff's intent to return.  See, e.g., Lujan, 504 U.S. at 579 (Kennedy, J., concurring in part and concurring in the judgment) ("While it may seem trivial to require that

[plaintiffs] acquire airline tickets to the project sites or announce a date certain upon which they will return, this is not a case where it is reasonable to assume that the affiants will be using the sites on a regular basis. . . ." (internal citation omitted)).

To be sure, Mr. Breeze's statements regarding his intent to return are rather generic.  But "[t]he Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'"  Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1039 (9th Cir. 2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)); accord Fiedler v. Ocean Props., Ltd., 683 F. Supp. 2d 57, 65 (D. Me. 2010).  Mr. Breeze needs to demonstrate only a plausible intention to return at the motion to dismiss stage, and the Court finds that he has met that burden.  Combined with his past denial of access to the restaurant, Mr. Breeze's submissions are thus sufficient to establish his standing to sue regarding the entrance claims.

### C.  The Interior Claims

Next, the Court considers Mr. Breeze's standing to sue on the "interior" claims.  Kabila's argument on this point is simple: "Because Breeze admits that he never entered the restaurant, he did not personally or actually experience any injury due to an alleged defect[] inside the restaurant."  Def.'s Reply at 3 n.1.  As a consequence, Kabila argues, his "alleged injury was not 'particularized' as it was not 'personal' to him."  Def.'s Mot. at 5; accord Hr'g Tr. 9:7–10.

This precise question—whether an ADA plaintiff has standing to sue a public accommodation regarding barriers to access that he has not personally encountered—has generated significant case law around the country, but, to the Court's knowledge, no court in this Circuit has squarely addressed it.  Drawing on related cases from this District and from persuasive precedent in other circuits, the Court concludes that a plaintiff "need not personally encounter each ADA

22

violation within [a facility] in order to seek its removal." Kreisler, 731 F.3d at 189; accord Steger v. Franco, Inc., 228 F.3d 889, 894 (8th Cir. 2000). Rather, it is sufficient that a plaintiff (1) know about the ADA violations inside the defendant's facility and (2) be deterred from visiting the facility because of that knowledge. Uber, 525 F. Supp. 3d at 76 ("[T]o have standing to sue under Title III of the ADA, a plaintiff must simply allege that he or she has 'become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation.'" (quoting White v. Bank of Am., N.A., 200 F. Supp. 3d 237, 243 (D.D.C. 2016))); accord, e.g., Mosley, 942 F.3d at 757 ("[A] plaintiff 'demonstrates the requisite threat of future injury where he establishes . . . that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers.'" (quoting Gaylor, 582 F. App'x at 580)).

    This rule is an application of the "futile gesture doctrine," which has its roots in the text of the ADA itself: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). The ADA, of course, cannot grant standing to a plaintiff who does not satisfy Article III's "irreducible" requirements, e.g., Spokeo, 578 U.S. at 339, but this Court joins many others in recognizing that "futile gesture" standing based on deterrence comports with Article III. An individual with a disability who is deterred from patronizing a restaurant because he knows it is not accessible suffers the same injury as an individual who actually visits the establishment but finds his way blocked: each is denied access to the facility due to his disability. E.g., Chapman, 631 F.3d at 950. Although one form is direct and physical while the other is indirect and psychological, both are discrimination, and both constitute "concrete and particularized" injuries cognizable in federal court. E.g., Kreisler, 731

F.3d at 188; <u>Chapman</u>, 631 F.3d at 950; <u>Pickern v. Holiday Quality Foods Inc.</u>, 293 F.3d 1133, 1137–38 (9th Cir. 2002).

A contrary rule "not only would be inefficient, but impractical," <u>Steger</u>, 228 F.3d at 894, "burden[ing] public accommodation[s] with more ADA litigation," <u>Doran</u>, 524 F.3d at 1047, "thwart[ing] the ADA's remedial goals," <u>id.</u>, and subjecting ADA plaintiffs to a Kafka-esque series of lawsuits just to vindicate their statutory right to equal access, <u>see id.</u> at 1046–47 (illustrating the absurdity of such a regime). <u>See also, e.g.</u>, <u>Kreisler</u>, 731 F.3d at 188–89. Indeed, the ADA itself rejects this kind of piecemeal litigation: the statute's "remedial scheme is not limited to orders for the removal of encountered barriers, but instead dictates that 'injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities.'" <u>Chapman</u>, 631 F.3d at 951 (quoting 42 U.S.C. § 12188(a)(2)). What's more, Kabila's proposed rule would permit non-compliant facilities to hide behind one ADA violation in order to escape liability for others. Neither the statute nor the Constitution mandates this "ironic if not perverse" state of affairs. <u>See</u> <u>Doran</u>, 524 F.3d at 1042.

To be clear, this rule has its limits. First, the Court only holds that an ADA plaintiff may sue regarding violations <u>known to him</u> at the time he filed his complaint. The Eighth and Ninth Circuits have gone farther, holding that an ADA plaintiff injured by one barrier at a given accommodation may sue regarding any other barrier related to his disability "[e]ven if [he] did not know about certain barriers when [he] first filed suit." <u>Doran</u>, 524 F.3d at 1044; <u>accord</u> <u>Chapman</u>, 631 F.3d at 947–53 (re-affirming the <u>Doran</u> rule); <u>Steger</u>, 228 F.3d at 893–94 (establishing the same rule). In this case, Mr. Breeze learned of the interior violations before filing his complaint,

see Breeze Decl. ¶ 12–13, so the Court need not—and does not—express a position on this broader rule.[10]

Second, an ADA plaintiff may sue only regarding violations that could affect him or someone with his disability.  See, e.g., Steger, 228 F.3d at 893–94 (holding that a blind plaintiff had standing to sue over barriers that "could injure blind persons"); Wasco v. T Corp., Civ. A. No. 04-0099 (JR), 2008 WL 53707, at *2–3 (D.D.C. Jan. 3, 2008) ("[A] plaintiff only has standing to complain of those violations . . . that restricted or could have restricted her own access to the goods and services at [defendant's restaurant].").  So, for instance, a plaintiff with "very limited use of his arms and hands" may sue regarding an obstacle placed in front of a toilet but not the absence of a grab rail he could not have used in the first place.  Sharp v. Capitol City Brewing Co., 680 F. Supp. 2d 51, 57–59 (D.D.C. 2010).

And third, an ADA plaintiff suing on a deterrence theory must still allege a real and immediate threat of future injury by plausibly showing that he intends to visit the accommodation if the barriers are removed.  See Mosley, 942 F.3d at 757 (requiring a plaintiff to "establish[] . . . that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." (quoting Gaylor, 582 F. App'x at 580).  The Court thus disagrees with Mr. Breeze's assertion that an ADA plaintiff "does not have to claim or allege that he will return to a place with known accessibility barriers simply to establish that he is likely to experience a future violation of his rights."  Pl.'s Opp'n at 15.  This is an overstatement: a plaintiff need not

---

[10] Notably, many judges who reject this more expansive rule still acknowledge that a plaintiff may sue regarding unencountered but known barriers.  See, e.g., Martinez v. Longs Drug Stores, Inc., No. CIVS-03-1843DFL CMK, 2005 WL 2072013, at *4 (E.D. Cal. Aug. 25, 2005) (rejecting the Steger rule but holding that standing principles "do not require that a plaintiff actually encounter every barrier he seeks to remove" if he "knows of and is deterred by the barrier at the time the complaint is filed" (cleaned up)), rev'd, 281 F. App'x 712 (9th Cir. 2008); see also Doran, 524 F.3d at 1051–52 (Duffy, J., dissenting); Steger, 228 F.3d at 895 (Loken, J., concurring and dissenting in part).

visit the facility or pledge to return while it remains inaccessible, but he must still plausibly allege that he intends to return but is deterred by the barriers.  See White, 200 F. Supp. 3d at 243–44 (dismissing two claims for lack of standing because "[t]here is simply no evidence in the record indicating that Plaintiff's knowledge of the [allegedly discriminatory] call center policy or overnight delivery policy in any way deterred her from calling her local Bank of America branch via a third-party relay service").

Thus, although "[t]he ADA does not transform every disabled person into a roving paladin," Wasco, 2008 WL 53707, at *2, neither does it provide so meager a remedy that an individual may only sue to remove the specific barrier which prevented him from accessing a given public accommodation.  So long as he knows about other violations at the time he filed his complaint and plausibly alleges that they are deterring him from returning to the facility, he will have standing to enjoin those alleged violations, even if he has never actually encountered them.

i.  Actual Knowledge

Here, Mr. Breeze has averred that he learned of the violations in the interior of the restaurant from his attorney and a hired inspector before he filed his complaint.  See Breeze Decl. ¶ 10, 12–13.  This is sufficient to show actual knowledge of the interior violations for purposes of the futile gesture doctrine.  See Kreisler, 731 F.3d at 188 n.5 (holding that a plaintiff who had been denied access to a restaurant because of a step at the entrance had established that he "knew about the[] violations [inside the restaurant] before he filed the complaint" by testifying that "his attorney informed him of the Diner's interior architectural barriers"); Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1081 (D. Haw. 2000) ("Once Plaintiff either encountered discrimination or learned of the alleged violations through expert findings or personal observation, he had 'actual notice' that Defendant did not intend to comply with the ADA.").

26

Kabila argues that Mr. Breeze has not actually satisfied the futile gesture doctrine because he "has neither alleged, nor offered any evidence, that he had <u>actual notice</u> that Kabila did not <u>intend</u> to comply with the ADA." Def.'s Reply at 7.[11]  Kabila thus appears to suggest that a plaintiff must somehow establish a defendant's subjective intention not to remedy the alleged violations in order to have standing.  This purported requirement is flatly contradicted by the case law.  See <u>Kreisler</u>, 731 F.3d at 188 n.5; <u>Uber</u>, 525 F. Supp. 3d at 75 (finding plaintiff had shown actual knowledge by declaring that "due to other stories that [she] has heard from people in her network . . . she 'knows Uber's service is not accessible and not a viable transportation option for . . . a user of a motorized wheelchair'" (citation omitted) (cleaned up)).  Kabila would have this Court create a <u>de facto</u> waiting period for private ADA suits, forcing a prospective plaintiff to inform any potential defendants of the grounds for his suit and then await confirmation that the defendant-to-be does not intend to take remedial action.  Such a rule can be found nowhere in the statute or the case law, and the Court declines Kabila's invitation to impose it by judicial fiat.  The Court concludes that Mr. Breeze has sufficiently pled that he had actual knowledge of the interior violations before filing his complaint.

     ii.  <u>Deterrence</u>

In order to have standing to sue under the futile gesture doctrine, Mr. Breeze must also show that he is deterred from returning to Thunder Burger by his knowledge of the interior violations.  The Court understands this requirement to consist of the same "intent to return"

---

[11] In addition to arguing he has not satisfied it, Kabila contends that Mr. Breeze is foreclosed from even relying on the futile gesture doctrine because he did not specifically mention it in his complaint.  See Def.'s Reply at 7.  Defendant cites no authority requiring a plaintiff to plead this particular theory of standing in the complaint, nor does any exist. The futile gesture doctrine is not a "defense to a claim for relief" which must be raised in a pleading, <u>see</u> Fed. R. Civ. P. 12(b)—it is a legal argument properly raised in briefing on a motion to dismiss.  <u>Cf.</u> <u>Johnson v. City of Shelby, Miss.</u>, 574 U.S. 10, 11 (2014) ("[Federal pleading rules] do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

showing discussed above, plus the added showing that the reason he has not returned is his knowledge of the existing barriers. See Mosley, 942 F.3d at 757; Kreisler, 731 F.3d at 188 (applying the Camarillo intent-to-return test in the deterrence context). Accordingly, since the Court has already determined that Mr. Breeze has established a plausible intent to return to Thunder Burger, the Court need only assess whether he has adequately connected his failure to return to his knowledge of the interior violations. The Court concludes that he has.

In his Complaint, Mr. Breeze alleged that he "continues to desire to visit [Thunder Burger] . . . but continues to be injured in that he is unable to [visit] . . . due to the architectural barriers that remain." Compl. ¶ 9. Likewise, he alleges that he "intends to visit the [Thunder Burger] again in the future" but that "unless and until [Thunder Burger] is brought into compliance with the ADA and/or ADAAG, [he] will remain unable to fully, properly, and safely access [it]." Compl. ¶ 25. And again in his declaration, Mr. Breeze states that, "if the barriers to access as described in paragraph 22 of the Complaint were remediated so that [he] could . . . utilize the services and facilities offered therein, [he] would immediately return to the Restaurant." Breeze Decl. ¶ 21. All of these averments either implicitly or explicitly refer to the barriers to access listed in paragraph 22, a catalog which includes both the entrance violations and the interior violations.

Although Mr. Breeze never says that the interior violations are deterring him from returning to Thunder Burger in precisely those words, he does not need to. "Deterrence" exists when a specific reason dissuades an actor from taking an action he intends or desires to take. See, e.g., Deterrent, Black's Law Dictionary (11th ed. 2019) ("[S]omething that makes people less likely to do something when they realize that it will bring them bad consequences"); Deter, Webster's Third New International Dictionary Unabridged (1993) ("[T]o turn aside, discourage, or prevent from acting by . . . consideration of dangerous, difficult, or unpleasant attendant

circumstances or consequences"). By listing out the alleged interior violations and then stating three times that he would return to Thunder Burger if those barriers were removed, Mr. Breeze has plausibly alleged that he intends to return to Thunder Burger but that the continued existence of the interior violations dissuades him. This is deterrence, and it is also precisely the kind of "conditional statement" of intent the Supreme Court found adequate to allege injury-in-fact in Laidlaw. See 528 U.S. at 184.[12] Mr. Breeze's allegations also mirror the statements of deterrence deemed sufficient at the pleading stage in Uber, 525 F. Supp. 3d at 75–76 (holding that plaintiff's hearsay knowledge of Uber's unreliability for disabled patrons and her statement that she "absolutely would download the Uber app if Uber became a viable, reliable transportation option" satisfied futile gesture doctrine), and in Equal Rights Center v. Hilton Hotels Corp., Civ. A. No. 07-1528 (JR), 2009 WL 6067336, at *3 (D.D.C. Mar. 25, 2009) (holding that an individual plaintiff had standing on the basis of his statements that he "visits Washington DC on a regular basis for work" and "would stay at a Hilton hotel but for his knowledge of accessibility barriers present") (citation omitted)). Especially at the pleading stage, Mr. Breeze has plausibly alleged that he is deterred from returning to Thunder Burger by his knowledge of the interior violations.

*   *   *   *   *

For the foregoing reasons, the Court concludes that it has jurisdiction over the entirety of Mr. Breeze's complaint. His entrance claims are not moot, and he has pled a past injury-in-fact relating to those claims as well as a plausible intent to return to Thunder Burger in the future. In addition, Mr. Breeze has standing to pursue his interior claims under the futile gesture doctrine: he

---

[12] Indeed, statements of deterrence in this context may be even stronger evidence of injury-in-fact than the statements at issue in Laidlaw, since an ADA plaintiff under this rule will know of actual barriers inside the restaurant, whereas the plaintiffs in Laidlaw were deterred only by their perception of pollution in the river. See Laidlaw, 528 U.S. 199–201 (Scalia, J., dissenting) (criticizing the Court for this distinction between actual pollution and "concerns" about pollution).

had actual knowledge of the alleged violations at the time he filed his complaint, and he has plausibly shown that he is deterred from returning to Thunder Burger by their continuing existence. The Court will thus deny Kabila's motion to dismiss for lack of subject matter jurisdiction.

## II.   **Failure to State a Claim**

Having disposed of Kabila's jurisdictional arguments, the Court will now address Kabila's alternative ground for dismissal: failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the Court will also deny this motion.

### A.   **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  As such, it must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Put differently, "[a] complaint can establish a facially plausible claim only if it sets forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Owens v. BNP Paribas, S.A., 897 F.3d 266, 272 (D.C. Cir. 2018) (quoting Iqbal, 556 U.S. at 678).

Determining the plausibility of a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679. "Detailed factual allegations" are not necessary, but the complaint must amount to "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" offering only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions

devoid of further factual enhancement." Id. at 678 (cleaned up) (quoting Twombly, 550 U.S. at 555, 557).  In short, if, after sifting out any legal conclusions and accepting the remaining factual contentions as true, the Court determines that plaintiff's claim for relief is plausible on its face, then it must deny a motion to dismiss under Rule 12(b)(6).

When deciding a motion to dismiss for failure to state a claim, "a court can consider the allegations in the complaint together with any materials properly brought before the court as attachments."  Khodorkovskaya v. Gay, 5 F.4th 80, 84 (D.C. Cir. 2021).  The court may not, however, consider declarations not attached to the complaint itself without converting the motion into one for summary judgment.  See, e.g., Lott v. Not-for-Profit Hosp. Corp., 319 F. Supp. 3d 277, 281 (D.D.C. 2018) (declining to consider affidavit attached to opposition brief on 12(b)(6) motion); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . .")

### B.  Analysis

A private suit under Title III of the ADA has three essential elements: "(1) [the plaintiff] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability."  Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1212 (9th Cir. 2020) (quoting Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007)); accord Camarillo, 518 F.3d at 156; Norkunas v. Seahorse NB, LLC, 444 F. App'x 412,

416 (11th Cir. 2011).[13]   Mr. Breeze's complaint alleges each of these elements, stating that he is disabled under the Act, Compl. ¶¶ 4–5; that Kabila operates a place of public accommodation as defined by the ADA, Compl. ¶¶ 17–21; and that he was "denied full access to, and full enjoyment of [the restaurant]" on the basis of his disability, Compl. ¶ 9.   Kabila challenges the <u>factual</u> sufficiency of Mr. Breeze's complaint, and, specifically, the absence of any details regarding the third element: the denial of access to Thunder Burger.

Undoubtedly, the complaint offers little in the way of narrative with respect to his attempted visit to Thunder Burger.   Paragraph 9 of the complaint reads: "Prior to the commencement of this action, Plaintiff personally visited the Defendants' Property with the intention of using the Subject Facility; however, Plaintiff was denied full access to, and full enjoyment of the facilities at Defendants' Property and the Subject Facility, and/or any accommodations offered to the public therein . . . ."  Compl. ¶ 9.   Paragraph 23 then provides slightly more detail: "Plaintiff has attempted to access the Defendants' Property and Subject Facility, but has been precluded from accessing the Defendants' Property and Subject Facility, because of his disabilities; specifically, Plaintiff was precluded by physical barriers to access, dangerous conditions, and ADA violations existing upon the Defendants' Property and Subject Facility."  <u>Id.</u> ¶ 23.   Suffice it to say, Mr. Breeze's complaint is no masterpiece of narrative storytelling.

---

[13] Kabila makes no mention of the DCHRA in its motion to dismiss, and in any event, the DCHRA "is applied in the same manner as the parallel federal antidiscrimination provisions." <u>Boykin v. Gray</u>, 895 F. Supp. 2d 199, 219 (D.D.C. 2012) (quoting <u>Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs, P.C.</u>, 950 F. Supp. 393, 405 (D.D.C. 1996)), <u>aff'd</u> 650 F. App'x. 4 (D.C. Cir. 2016).  The result is that Mr. Breeze's DCHRA claim will stand or fall with his ADA claim. <u>See</u> <u>Whitbeck v. Vital Signs, Inc.</u>, 116 F.3d 588, 591 (D.C. Cir. 1997) ("[W]hen determining the elements of a <u>prima facie</u> case . . . in a disability discrimination case under the DCHRA, District of Columbia courts rely on cases decided under analogous federal antidiscrimination laws.").

But Kabila is incorrect when it claims that paragraph 9 is the "only factual allegation contained in [the] Complaint." Def.'s Mot. at 7. Not only does this ignore the somewhat-clearer paragraph 23—it entirely fails to reckon with paragraph 22's detailed list of the "specific violations" alleged to exist at Thunder Burger. See Compl. ¶ 22. This accounting takes up the better part of four pages and includes dozens of sub-paragraphs and sub-sub-paragraphs setting forth specific alleged violations of the law. See Compl. at 6–9.

Kabila entirely omits this catalog of Thunder Burger's alleged violations from its motion and instead focuses on a few specific facts missing from Mr. Breeze's complaint. In particular, Kabila insisted both in its motion and at oral argument that Mr. Breeze's failure to provide a specific date on which he attempted to visit the restaurant was fatal to his suit.[14] Def.'s Mot. at 2, 7; Hr'g Tr. 8:12–9:5, 33:16–34:18. This information would no doubt be helpful to Kabila in investigating the underlying facts and in developing arguments for summary judgment. But the ultimate purpose of the pleading standards is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley, 355 U.S. at 47). The Court considers the complaint's generic sketch of Mr. Breeze's attempt to visit Thunder Burger, plus the four-page enumeration of his specific allegations in paragraph 22, to be sufficient to put Kabila on notice of both the nature of and grounds for Mr. Breeze's suit. The failure to allege a specific date on which Mr. Breeze sought to

---

[14] As discussed briefly above with respect to Mr. Breeze's standing, Kabila also repeatedly faults Mr. Breeze for failing to allege any effort to "communicate with the staff or ask[] for an accommodation" when he encountered the step at the entrance. Def.'s Mot. at 2, 7; Def.'s Reply at 3–4. But the ADA does not impose an "ask-for-help" requirement, and imposing one as a prerequisite for bringing suit is anathema to the ADA itself. Federal law requires that Thunder Burger be equally accessible to disabled and non-disabled customers alike: the Court will not approve Kabila's contention here that disabled customers must linger on a sidewalk in winter in order to flag down a staff member—something a non-disabled customer would not have to do—before they may vindicate their rights in court.

enter Thunder Burger does not deprive Kabila of "fair notice" of the basis of the action or otherwise render the claim for relief "implausible."

Although the complaint is certainly barebones and would have benefitted from the inclusion of the details later included in Mr. Breeze's declaration, the Court concludes that Mr. Breeze's complaint is "more than a defendant-unlawfully-harmed me accusation" and "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted).

## Conclusion

For the foregoing reasons, the Court will deny the motion to dismiss in full.  Neither Kabila's subsequent actions nor its uncorroborated contradiction of Mr. Breeze's complaint render the entrance claims moot, and Mr. Breeze has plausibly pled an injury-in-fact with respect to both the entrance violations and the interior violations.  Finally, the Court concludes that Mr. Breeze's complaint, though light on narrative details, contains sufficient factual matter to state a plausible claim for relief.  An accompanying Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: December 15, 2021